UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

TAMARA S.,[1]

        Plaintiff,

        v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

Case No. 3:19-cv-1391-YY

OPINION AND ORDER

YOU, Magistrate Judge:

On November 29, 2012, plaintiff filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, alleging disability beginning December 23, 2010. Tr. 729. The administrative law judge ("ALJ"), Vadim Mozyrsky, issued a decision on April 10, 2015, finding plaintiff not disabled, *id.*, and this court reversed and remanded that decision on March 28, 2018. *Tamara S. v. Comm'r Soc. Sec. Admin.*, No. 3:16-CV-02377-CL, 2018 WL 1535480 (D. Or. Mar. 28, 2018).

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of her last name.

1 – OPINION AND ORDER

In the meantime, plaintiff filed a new Title XVI claim on December 23, 2016. Tr. 729. The agency consolidated both of plaintiff's Title XVI claims, Tr. 798, and plaintiff appeared before ALJ Mozyrsky for a second hearing on April 3, 2019. Tr. 750-73. At the hearing, plaintiff amended her alleged onset date to April 4, 2013. Tr. 729. After receiving testimony from plaintiff and a vocational expert ("VE"), ALJ Mozyrsky issued a second decision on May 28, 2019, again finding plaintiff not disabled within the meaning of the Act. Tr. 729-41.

The Appeals Council denied plaintiff's request for review on October 29, 2019. Tr. 796-97. Therefore, the ALJ's second decision is the Commissioner's final decision and subject to review by this court. 20 C.F.R. § 416.1481. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(g)(3). For the reasons set forth below, that decision is REVERSED and REMANDED for further proceedings.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences

reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since April 4, 2013, the alleged onset date. Tr. 732. At step two, the ALJ determined plaintiff suffered from the following severe impairments: degenerative disc disease, osteoarthritis, and carpal tunnel syndrome. *Id.* The ALJ recognized other impairments in the record, i.e., osteopenia, alcohol abuse, and adjustment disorder with anxiety/depression, but concluded these conditions to be non-severe. Tr. 732-33.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 734. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined she could perform light work as defined in 20 C.F.R. § 416.967(b), except plaintiff can: lift or carry 20 pounds occasionally and 10 pounds frequently; sit and stand/walk for six hours of a an eight hour work day; push and pull as much as she is able to lift and carry; frequently climb ladders/ropes/scaffolds, crawl, and

handle/finger with the right (dominant) upper extremity; and occasionally reach overhead bilaterally. Tr. 735.

At step four, the ALJ found plaintiff capable of performing past relevant work as a courier. Tr. 740. Thus, the ALJ concluded plaintiff was not disabled. *Id.*

## DISCUSSION

**I.     Dr. Brett's Opinion**

Plaintiff's arguments center around the ALJ's assessment of the medical opinion of her treating physician, Darrell Brett, M.D., regarding plaintiff's neck and upper extremities.

The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). Additionally, the ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or other factors the ALJ deems material to resolving ambiguities. *Morgan v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).

Dr. Brett performed an anterior cervical discectomy and fusion surgery on plaintiff on October 7, 2011. Tr. 292. As the ALJ observed, Dr. Brett provided the following opinion in October 2012:

> [Plaintiff] can be working in a light-duty capacity. She should not lift or carry more than 25 lbs., perform any repetitive or heavy exertion with the upper extremities, or maintain any awkward or stationary neck positions that aggravate her pain. These will be permanent occupational and recreational restrictions.

Tr. 738 (citing Tr. 288). The ALJ gave Dr. Brett's opinion "partial weight":

> The restriction on lifting is consistent with the evidence, and the residual functional capacity prohibits heavy exertion. Although Dr. Brett gave limits on neck positioning, this was in 2012. Recent examinations of the neck have been within normal limits. As discussed below, the vocational expert found work available with a restriction on repetitive use of the upper extremities.

*Id.* (citing Tr. 1390-97, 1625).

### A.   Neck Limitations

The ALJ relied on two portions of the record to reject Dr. Brett's opined neck limitations—the March 27, 2019 examination notes of treating physician Aruna Jayaram, M.D., and an April 5, 2017 consultative examination report by Kim Webster, M.D. Tr. 738 (citing Tr. 1390-97, 1625). Plaintiff argues these records do not support the ALJ's conclusion that "[r]ecent examinations of the neck have been within normal limits." Pl. Br. 6-8; Tr. 738.

Indeed, the ALJ erroneously relied on Dr. Jayaram's March 27, 2019 examination notes to support this conclusion. Plaintiff saw Dr. Jayaram on March 27, 2019, for multiple reasons, including a cough, cervical cancer screening, and "disability." Tr. 1618. Although the chart notes indicate that a "clinical exam is normal," that finding is made in conjunction with Dr. Jarayam's note that she "[w]ill inform patient of PAP results." Tr. 1625. Plaintiff, in fact, had a "Pap smear" done that day. *Id.*

Any other interpretation of the chart note would be in conflict with the other notations from plaintiff's March 27, 2019 appointment, where Dr. Jayaram wrote that plaintiff's "neck pain" was "ongoing," she was "limited in her neck movements," her pain "is aggravated by activity," she is "limited in her ability to use her arms because of the pain and numbness[,]" and

she has "decreased range of motion [her] c[ervical] spine." Tr. 1625-26. Any other conclusion also would conflict with the letter that Dr. Jayaram *wrote to the ALJ that same date* in which she stated, "[d]uring my first encounter with [plaintiff], I noted that her neck pain was a longstanding problem," plaintiff "has consistently reported radicular pain in her neck," and plaintiff "consistently appeared to be in pain." Tr. 1640. Dr. Jayaram further wrote that plaintiff's "reports of pain are consistent with her surgeon's opinion about her permanent restrictions following her [neck] surgery." *Id.* Dr. Jayaram had performed a practical test of plaintiff's reaching ability, which "showed that her reaching in any direction was limited to a proximately five minutes at one time." *Id.* Dr. Jayaram also concluded that plaintiff "is limited to carrying ten pounds less than six hours out of an eight hour day" and "limited to handling objects for less than six hours in an eight hour day." *Id.* Dr. Jayaram stated that in her medical opinion, plaintiff has had these limitations since at least April 2013. *Id.* Such findings are not consistent with a "normal" neck exam. Thus, the ALJ's reliance on the language in Dr. Jayaram's March 27, 2019 chart note is not supported by substantial evidence.[2]

The ALJ's reliance on Dr. Webster's report also was in error. Dr. Webster examined plaintiff for one hour on April 5, 2017. Tr. 1390. The results of the examination appear mixed. To some extent, Dr. Webster's report supports the ALJ's finding of "normal" examinations. For example, Dr. Webster noted that plaintiff's left Spurling's test is "asymptomatic," and he diagnosed her with "[n]eck pain with a normal neuromuscular exam." Tr. 1394. However, Dr.

---

[2] Plaintiff does not raise this argument, but it necessarily follows that ALJ also erred in rejecting Dr. Jayaram's opinion on the basis of the same March 27, 2019 chart note. Tr. 739 ("Dr. Jayaram's opinion receives limited weight. The lifting restrictions are inconsistent with recent examination findings.") (citing Tr. 1390-97, 1625). Where it was not logical for the ALJ to reject Dr. Brett's opinion based on examination notes recording the results of a PAP smear, that was also an invalid reason to reject Dr. Jayaram's opinion.

Webster also noted that "[r]ight Spurling's test leads to posterior neck pain," and that plaintiff described her pain had improved after surgery in 2011, but had gradually increased in the "last few years":

> The pain in the neck increases if she lifts, bends or flexes forward at the neck. Housework tends to exacerbate it.  The pain occurs over the left deltoid and triceps muscle areas.  This is intermittent and an achy sensation.  It occurs two to four times per day and can last one hour.  She has weakness in both arms.

Tr. 1391, 1394.

Additionally, as plaintiff asserts, Dr. Webster's description of plaintiff's cervical spine range of motion as "[e]xtension 13 degrees x3, flexion 30 degrees x3, side bending 20 degrees x3 to the right and 25 degrees to the left[,] [r]otation . . . 40 degrees bilaterally" does not appear to indicate a normal range of motion.[3]  Pl. Br. 7-8 (citing Tr. 1393).  Agency regulations provide that, for "Examination of the Spine," "*[m]easurements of joint motion* are based on the techniques described in the chapter on the extremities, spine, and pelvis in the current edition of the 'Guides to the Evaluation of Permanent Impairment' published by the American Medical Association."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00G (emphasis in original); *see also* POMS DI 34004.101(G) (same).  According to the American Medical Association's *Guides to the Evaluation of Permanent Impairment*, a normal cervical spine range of motion is extension of 75 degrees, flexion of 60 degrees, right and left lateral flexion of 45 degrees, and left and right

---

[3] Plaintiff contends that "[n]ormal range of motion for the cervical spine is as follows: The cervical spine's range of motion is approximately 80° to 90° of flexion, 70° of extension, 20° to 45° of lateral flexion, and up to 90° of rotation to both sides."  Pl. Br. 7 (citing Erik E. Swartz et al., *Cervical Spine Functional Anatomy and the Biomechanics of Injury Due to Compressive Loading*, NATL. CTR. BIOTECH INFO., *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1250253/ (last visited March 25, 2021)).

rotation of 80 degrees.  AMA, *Guides to the Evaluation of Permanent Impairment*, Table 16-12 (6th ed. 2008).

This court has elsewhere recognized that "adopted norms established by the AMA Guides for cervical ranges of motion, [are] as follows: flexion of 60 degrees, extension of 75 degrees, right and left lateral flexion of 45 degrees, and left and right rotation of 80 degrees." *Van Dine v. Astrue*, No. 03:10-CV-00712-HU, 2012 WL 1069985, at *7 n.8 (D. Or. Feb. 27, 2012), *report and recommendation adopted*, 2012 WL 1068073 (D. Or. Mar. 29, 2012).  Other case law from within the Ninth Circuit supports the finding that plaintiff's neck range, as described in Dr. Webster's report, was not normal.  *See, e.g.*, *Orsburn v. Comm'r Soc. Sec. Admin.*, No. CV-17-00296-TUC-EJM, 2018 WL 4042766, at *2 (D. Ariz. Aug. 24, 2018) ("cervical ROM 50 degrees flexion (normal 50), 40 degrees extension (normal 60), 50 degrees left rotation (80 normal), and 50 degrees right rotation (80 normal)"); *Jarvis v. Comm'r Soc. Sec. Admin.*, No. 2:14-CV-2952-CMK, 2016 WL 1108939, at *6 (E.D. Cal. Mar. 22, 2016), *rev'd on other grounds sub nom*. *Jarvis v. Berryhill*, 722 F. App'x 616 (9th Cir. 2018) ("[T]he claimant's physical examination revealed . . . a reduced range of motion of the cervical spine (i.e., flexion at 40/50 degrees, extension at 35/60 degrees, lateral flexion at 30/45 degrees, and normal rotation)[.]"); *Woodring v. Colvin*, No. 6:12-CV-00585-RE, 2013 WL 6712635, at *3 (D. Or. Dec. 18, 2013) ("A normal range of cervical motion is approximately 80–90 degrees of flexion, 70 degrees of extension, and rotation left and right of up to 90[.]").

Plaintiff alternatively contends that even if the ALJ had been correct in his assertion that plaintiff's recent neck examinations were normal, he failed to address her "neck functioning during the entirety of the period of issue, which runs from her alleged onset date on 2012 through the ALJ's decision in 2019."  Pl. Br. 8.  An ALJ may not consider evidence that only supports

the non-disability determination, while disregarding evidence that supports the contradictory opinion from a physician. *See, e.g.*, *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) ("In concluding that the most recent medical evidence indicates that [the plaintiff] was improving," an ALJ cannot "selectively rel[y] on some entries in [the plaintiff's] records . . . and ignore[] the many others that indicate[] continued, severe impairment."); *Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (holding it impermissible for the ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports"). Nevertheless, because the ALJ erred for the reasons discussed above, it is unnecessary to reach this alternative argument.[4]

For these reasons, the ALJ's characterization that "[r]ecent examinations of the neck have been within normal limits" was not a specific-and-legitimate reason to reject Dr. Brett's opined neck limitations and was not supported by substantial evidence.

### B.     Upper-Extremities Limitation

The parties debate whether or not the ALJ rejected Dr. Brett's upper-extremities limitation. *See* Pl. Br. 8-10; Def. Br. 7. Dr. Brett opined plaintiff could not "perform any repetitive or heavy exertion with the upper extremities." Tr. 288. The ALJ gave Dr. Brett's opinion "partial weight." Tr. 738. The ALJ first noted that Dr. Brett's "restriction on lifting is consistent with the evidence, and the residual functional capacity prohibits heavy exertion." *Id.* The ALJ then discussed Dr. Brett's neck limitations. *Id.* Finally, the ALJ noted "the vocational expert found work available with a restriction on repetitive use of the upper extremities." *Id.*

---

[4] The Commissioner argues that the ALJ relied on all of plaintiff's "longitudinal records." Def. Br. 7. The Commissioner cites extensively to these portions of the longitudinal record to support the ALJ's conclusions about plaintiff's neck limitations. *See id.* at 6. But, as the ALJ never cited to these records, this constitutes an impermissible post hoc rationalization. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009).

At the hearing, the ALJ asked the VE whether plaintiff's past work as a courier would be available if she could perform only "occasional overhead reaching bilaterally," a limitation that is reflected in the RFC. Tr. 765. The ALJ also posed an additional hypothetical condition related to repetitive reaching:

> Adding on to that hypothetical, the individual would not be able to do repetitive reaching, so I'll say no work at a production rate pace, such as assembly line work, but would still be able to perform goal-oriented work due to reaching restrictions.

*Id*. The VE answered yes to both questions.

Elsewhere in his decision, the ALJ referenced this testimony by the VE:

> When asked a follow up question that gave additional limits of frequent reaching in all directions, with no ability to repetitively reach (no production rate pace, but could perform goal oriented work), the vocational expert testified that such an individual could work as a courier (as generally performed in the national economy).

Tr. 740. The ALJ then found that, "[b]ased on the testimony of the vocational expert, . . . the claimant can perform past relevant work as a courier." *Id.*

The Commissioner admits the "decision was less than clear regarding the upper extremity limitations," but argues that, even where the ALJ's decision contains "less than ideal clarity," this court must "uphold it if the agency's path may reasonably be discerned." Def. Br. 7 (quoting *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012)). While that is a correct statement of law, here, it cannot be reasonably discerned that the ALJ intended to reject Dr. Brett's repetitive-reaching limitation. In conjunction with his assessment of Dr. Brett's opinion, the ALJ made a point to observe that "the vocational expert found work available with a restriction on repetitive use of the upper extremities." Tr. 738. This language, combined with the fact that the ALJ asked the VE a question regarding repetitive and the ALJ's finding that "[b]ased on the testimony of the vocational expert, . . . the claimant can perform past relevant work as a courier,"

10 – OPINION AND ORDER

indicate the ALJ did not wholly reject Dr. Brett's repetitive-reaching limitation. Instead, it appears the ALJ found plaintiff could perform past work that included repetitive reaching as long as it was "goal oriented" and not at a "production rate pace."

Plaintiff contends the ALJ erred by redefining Dr. Brett's repetitive-reaching limitation to allow for repetitive reaching that was "goal oriented." Pl. Br. 12. Plaintiff argues that this "re-definition" of Dr. Brett's restriction is not only contrary to Dr. Brett's opinion but also runs contrary to common sense and the plain meaning of the terms. *Id.* As additional support, plaintiff cites to the portion of the hearing transcript where her attorney asked the VE, "[W]ould you agree that a person who's doing this job [of courier] is doing repetitive exertion with their upper extremities?" to which the VE responded, "Yes." Tr. 771. Plaintiff's counsel also elicited from the VE that the DOT listing for courier included "frequent reaching," which meant six hours a day. Tr. 770.

Indeed, Dr. Brett's opinion does not use the term "goal oriented" or any language suggesting that the repetitive-reaching restriction was limited to "goal oriented" reaching. Additionally, elsewhere in his chart notes, Dr. Brett observes that plaintiff suffered pain when generally subjected to "over-exertion or sustained or awkward neck positions." Tr. 288; *see also id.* ("symptomatic aggravations . . . are expected to occur on a chronic basis with over-exertion in the future"). Thus, neither Dr. Brett's opinion nor his chart notes suggest that plaintiff may over-exert herself as long as it is "goal oriented." In this context, repetitive means what it normally means, i.e., "happening again and again." *See Repetitive*, Merriam-Webster, https://www.merriam-webster.com/dictionary/repetitive (last visited March 27, 2021). The ALJ's unsupported interpretation of Dr. Brett's opinion to include "goal oriented" repetitive reaching constitutes error.

11 – OPINION AND ORDER

**II.     Remand**

When a court determines the Commissioner committed harmful error in making a decision to deny benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)).  In determining whether to remand for further proceedings or immediate payment of benefits, the Ninth Circuit employs the "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand.  *Garrison*, 759 F.3d at 1020.  Even if all of the requisites are met, however, the court may still remand for further proceedings, "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Id.* at 1021.

Here, the first requisite of the *Garrison* test is met.  As discussed above, the ALJ failed to properly evaluate Dr. Brett's opinions as to plaintiff's neck and repetitive-reaching limitations. However, the second requisite is not met, as there are arguable conflicts in the record and further proceedings are necessary for the ALJ to resolve them.[5]  The court does not reach the third step of the credit-as-true inquiry.

---

[5] The Commissioner contends "[t]his is not a rare case in which the Court would be justified in awarding benefits because," e.g., "[t]he record . . . includes opinions from Drs. Webster, Gostnell, Wilcox, Paek, Jensen, Davenport, and Moner—none of which Plaintiff challenged in her opening brief—that support the ALJ's conclusion that Plaintiff retained the ability to work in some capacity." Def. Br. 11 (citing Tr. 88-94, 289, 300-04, 314-19, 733-34, 737-39, 831-38, 844-51, 1398-1403).  However, some of these opinions are not from medical experts with any expertise in neck or upper extremity impairments and therefore are not persuasive on that issue. 20 C.F.R. §§ 404.1527(c)(3)-(6); 416.927(c)(3)-(6) (A medical opinion is given less weight if it is inconsistent with the record or outside of the doctor's specialty area.); *see Batson v. Comm'r*

On remand, the ALJ must (1) accept Dr. Brett's opinion or provide legally sufficient reasons for rejecting it, (2) if applicable, obtain additional VE testimony regarding what work plaintiff can do, and (3) conduct any additional proceedings as appropriate.

## ORDER

For the reasons discussed above, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED  March 29, 2021.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge

---

*Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (affirming an ALJ's decision to discount treating physician's opinion because it was "conclusory, brief, and unsupported by the record as a whole, or by objective medical findings" (citation omitted)).  Dr. Gostnell and Dr. Wilcox, for example, are psychologists.  *See* Tr. 733-34.

13 – OPINION AND ORDER